**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANE E. WASWICK,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MCAFEE CORP., PETER LEAV, SOHAIB ABBASI, MARY CRANSTON, TIM MILLIKIN, JON WINKELRIED, KATHY WILLARD, and JEFF WOOLARD,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Dane E. Waswick ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against McAfee Corp. ("McAfee" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Condor BidCo, Inc. ("Parent") through merger vehicle Condor Merger Sub, Inc. ("Merger Sub") (collectively with "Parent", "The Parent Consortium") as a result of an unfair

1   process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the

2   "Proposed Transaction").

3          2.      The terms of the Proposed Transaction were memorialized in a November 8, 2021,

4   filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive

5   Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger

6   Agreement, The Parent Consortium will acquire all of the remaining outstanding shares of

7   McAfee's common stock at a price of $26.00 per share in cash. As a result, McAfee will become

8   an indirect wholly-owned subsidiary of entities owned by The Parent Consortium.

9          3.      Thereafter, on December 21, 2021, McAfee filed a Preliminary Proxy Statement on

10  Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed

11  Transaction.

12         4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the

13  Preliminary Proxy Statement describes an insufficient process in which the McAfee Board failed

14  to create an independent committee composed of disinterested directors to run the sales process.

15         5.      Additionally, it appears as though the Board has entered into the Proposed

16  Transaction to procure for themselves and senior management of the Company significant and

17  immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the

18  consummation of the Proposed Transaction, Company Board Members and executive officers will

19  be able to exchange all Company equity awards for the merger consideration.

20         6.      In violation of the Exchange Act, Defendants caused to be filed the materially

21  deficient Preliminary Proxy Statement on December 21, 2021 with the SEC in an effort to solicit

22  Plaintiff to vote his McAfee shares in favor of the Proposed Transaction.  The Preliminary Proxy

23  Statement is materially deficient, deprives Plaintiff of the information necessary to make an

24  intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction,

25  and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement

26  omits and/or misrepresents material information concerning, among other things: (a) the sales

27  process and in particular certain conflicts of interest for management; (b) the financial projections

28

for McAfee, provided by the Company to the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Goldman Sachs and/or Morgan Stanley and provided to the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Michigan and, at all times relevant hereto, has been a McAfee stockholder.

10.     Defendant McAfee is a global leader in online protection for consumers. McAfee is incorporated under the laws of the State of Delaware and has its principal place of business at 6220 America Center Drive, San Jose, CA 95002.  Shares of McAfee common stock are traded on the NasdaqGS under the symbol "MCFE".

11.     Defendant Peter Leav ("Leav") has been a Director of the Company at all relevant times.  In addition, Leav serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant Sohaib Abbasi ("Abbasi") has been a director of the Company at all relevant times.

13.     Defendant Mary Cranston ("Cranston") has been a director of the Company at all relevant times.

14.     Defendant Tim Millikin ("Millikin") has been a director of the Company at all relevant times.

15.     Defendant Jon Winkelried ("Winkelried") has been a director of the Company at all relevant times.

16.     Defendant Kathy Willard ("Willard") has been a director of the Company at all relevant times.

17.     Defendant Jeff Woolard ("Woolard") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party The Parent Consortium includes several investment entities, including Adevent International Corporation ("Advent") and Permira Advisers LLC ("Permira"), Crosspoint Capital Partners ("Crosspoint Capital"), Canada Pension Plan Investment Board ("CPP Investments"), GIC Private Limited ("GIC"), and a wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA").

20.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because McAfee maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

24.     McAfee provides various integrated security, privacy, and trust solutions to consumers in the United States and internationally. Its security technologies enable home users to protect their devices against fileless attacks, viruses, malware, and other online threats. The Company's products include device security comprising anti-malware software and real-time threat defense, online privacy and comprehensive internet security, and identity protection solutions. Its solutions also cover consumers' individual products, such as Mobile Security, Safe Connect, Safe Family, WebAdvisor, and Identity Theft Protection. The Company provides personal protection services that protect consumers and their families across their digital lives, which cover cross-device identity protection, online privacy, and Internet and device security against virus, malware, spyware, and ransomware attacks. It provides solution under Total Protection and LiveSafe portfolio brands. McAfee was incorporated in 2019 and is headquartered in San Jose, California.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the August 10, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted such milestones as Subscribers increasing by 17% to 19.4 Million, Up 556,000 QoQ and Net Cash Provided by Operating Activities Grew 62% YoY to $189 Million.

26.     Speaking on these positive results, CEO Defendant Leav commented on the Company's positive financial results as follows, "'We are very pleased with our team's execution this quarter. Not only did McAfee deliver another solid quarter with revenue, DTC subscribers, profitability and cash flow from operations growing double-digits, but did so while simultaneously closing the transaction to sell the Enterprise Business. Our continued commitment to secure our customers' online footprint helped us to drive 22% year-over-year consumer revenue growth while

we added 556,000 net new direct-to-consumer subscribers in Q2. We look forward to continuing our journey as a pure-play consumer business.'"

27.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by McAfee.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused McAfee to enter into the Proposed Transaction without providing requisite information to McAfee stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Notably, the Preliminary Proxy fails to provide adequate information regarding why the Board did not create a committee of independent and disinterested directors to run the sales process.

31.     The Preliminary Proxy Statement also fails to provide adequate information as to why Morgan Stanley was engaged in addition to Goldman Sachs to serve as a second financial advisor, fails to provide adequate information regarding Morgan Stanley's role considering it did not submit a fairness opinion, and fails to disclose the total amount of consideration that Morgan Stanley will receive in exchange for its financial advisory services related to the Proposed Transaction.

32.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and The Parent Consortium or any of its members, whether this agreement differed from any other agreement with potentially

interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.   It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

34.   On November 8, 2021, McAfee issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN JOSE, Calif. – November 8, 2021 –** McAfee Corp. (NASDAQ:MCFE, "McAfee"), a global leader in online protection, today announced it has entered into a definitive agreement to be acquired by an investor group led by Advent International Corporation ("Advent") and Permira Advisers LLC ("Permira"), Crosspoint Capital Partners ("Crosspoint Capital"), Canada Pension Plan Investment Board ("CPP Investments"), GIC Private Limited ("GIC"), and a wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA") (collectively, "the Investor Group").
>
> As part of the transaction, the Investor Group will acquire all outstanding shares of McAfee common stock for $26.00 per share in an all-cash transaction valued at approximately $12 billion on an equity value basis, and over $14 billion on an enterprise value basis after giving effect to repayment of McAfee debt. The purchase price represents a premium of approximately 22.6% over McAfee's closing share price of $21.21 on November 4, 2021, the last trading day prior to media reports regarding a potential sale of McAfee.
>
> Upon completion of the transaction, the Investor Group will take ownership of McAfee. As a privately held company, McAfee will continue building on its success and proven track record of growth as a pure-play consumer cybersecurity leader following the sale of McAfee's Enterprise business, and the associated one-time dividend of $4.50 per share, to private equity firm Symphony Technology Group for $4.0 billion, which closed on July 27, 2021.
>
> "This transaction is a testament to McAfee's market-leading online protection solutions, our talented employees, and outstanding customers and partners," said McAfee President and Chief Executive Officer, Peter Leav. "We want to thank our employees for their continued hard work and commitment to McAfee. We are thrilled to be partnering with premier firms who truly understand the cybersecurity landscape and have a proven track record of success."

In 2017, TPG partnered with Intel to carve out McAfee from Intel's core operations to establish a pure-play cybersecurity company with access to significant capital, operational and technology resources. McAfee completed its initial public offering last year, with TPG and Intel remaining as shareholders in the company.

Jon Winkelried, Chief Executive Officer of TPG and Chair of the McAfee Board, commented: "Today's announcement signals continued growth and opportunity for McAfee. Over the last four years, the company has expanded its product portfolio, enhanced its go-to-market strategy, and pursued strategic M&A, including the divestiture of its enterprise business. We're proud that today McAfee is a leading consumer cybersecurity franchise, protecting the digital lives of 20 million subscribers across the globe."

Tim Millikin, Partner at TPG and McAfee Board member, added: "It's been a privilege to have partnered with McAfee and its leadership team to help navigate the company's transformation and growth over the last four years. Our partnership with McAfee reflects TPG's focus on investing in growth to build companies that are driving differentiated value in their markets."

"McAfee is one of the most trusted brands in the essential business of consumer digital protection," said Bryan Taylor, Head of Advent's Technology Investment Team and a Managing Partner in Palo Alto. "As consumers face new and complex cyber risks, we see tremendous opportunity to build on McAfee's differentiated technology platform to continue delivering innovative solutions that can protect all facets of the digital lives of people around the world. We look forward to working alongside our investment partners and the talented McAfee team to continue setting the bar for consumer digital protection."

Brian Ruder, Co-Head of Technology at Permira, commented: "The need for personalized, innovative, and intuitive online protection services has never been greater. McAfee boasts an enviable brand, extensive partner ecosystem, loyal customer base and a rigorous commitment to product development. With our extensive experience in scaling global consumer technology and cybersecurity businesses, we are excited to work closely with McAfee and our fellow investors to help position the company for even greater heights."

Greg Clark, Managing Partner at Crosspoint Capital and former Chief Executive Officer of Symantec added: "The risks that consumers face from all aspects of their digital lives is immense, and these risks are unprecedented and rapidly increasing. Consumers buy from brands they trust, and with the globally recognized brand of McAfee, we see the long term opportunity to deliver products and services to address these risks in all aspects of their digital presence."

Collectively, the Investor Group will provide McAfee with both financial and operational resources to further enhance its consumer offering and capture the rapid growth in consumer demand for digital protection services. McAfee's strong brand awareness, diversified distribution model and customer-centric approach has made it a clear leader in the rapidly evolving consumer online protection space. The

Investor Group will support McAfee as it continues to broaden its differentiated online protection solutions and drive long-term value through market expansion.

**Transaction Details**

Under the terms of the agreement, which has been approved by the McAfee Board of Directors, McAfee shareholders will receive $26.00 in cash for each share of common stock they own.

The transaction is expected to close in the first half of 2022, subject to customary closing conditions, including, among others, approval by McAfee shareholders, receipt of regulatory approvals, and clearance by the Committee on Foreign Investment in the United States. Intel Americas, Inc. and certain funds affiliated with TPG Global, LLC have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of company stock in favor of the transaction, subject to certain conditions. The voting support under the voting agreement ceases automatically if the merger agreement is terminated or if the McAfee board makes an adverse recommendation change. These stockholders currently represent approximately 67.9% of the current outstanding voting power of the McAfee common stock.

Consistent with the McAfee Board's commitment to maximizing stockholder value, under the terms of the definitive merger agreement, McAfee's Board and advisors may actively initiate, solicit and consider alternative acquisition proposals during a 45-day "go shop" period. McAfee has the right to terminate the merger agreement to accept a superior proposal during the go-shop period, subject to the terms and conditions of the merger agreement. There can be no assurances that this process will result in a superior proposal, and McAfee does not intend to disclose developments with respect to this solicitation process unless and until McAfee's Board makes a determination requiring further disclosure.

The buyer entity in the merger, Condor BidCo, Inc. ("Parent"), has obtained equity financing and debt financing commitments for the purpose of financing the transactions contemplated by the merger agreement. Funds advised by the Investor Group have committed to capitalize Parent at the closing of the merger with an aggregate equity contribution equal to $5.2 billion on the terms and subject to the conditions set forth in signed equity commitment letters.

The Investor Group has obtained a commitment from JPMorgan Chase Bank, N.A., Bank of America, N.A., Credit Suisse AG, Cayman Islands Branch, Barclays Bank PLC, Citibank, N.A. (and/or its affiliates), HSBC Bank USA, National Association, Royal Bank of Canada, CPPIB Credit Investments III Inc., UBS AG, Stamford Branch and PSP Investments Credit II USA LLC to provide debt financing consisting of a $6.66 billion first lien term loan facility, a $1 billion first lien cash flow revolving facility and a $2.32 billion senior unsecured bridge facility (which may be replaced with senior notes issued through a Rule 144A or other private placement), subject, in each case, to customary conditions. PSP Investments Credit USA LLC and investment funds managed by Neuberger Berman have agreed to

provide the Investor Group with preferred equity financing with an aggregate liquidation preference of up to $800 million, subject to customary conditions.

Upon completion of the transaction, McAfee common stock will no longer be listed on any public securities exchange.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that McAfee insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of McAfee.

36.     Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| | Number of Shares of Company Stock | Aggregate Consideration for Company Stock |
|---|---|---|
| Peter Leav | 942,112 | $24,494,912.00 |
| Venkat Bhamidipati | 383,131 | $9,961,406.00 |
| Ashish Agarwal | 224,686 | $5,841,836.00 |
| Gagandeep Singh | 0 | $0 |
| Sohaib Abbasi | 70,459 | $1,831,934.00 |
| Mary Cranston | 50,868 | $1,322,568.00 |
| Tim Millikin | 0 | $0 |
| Kathy Willard | 27,404 | $712,504.00 |
| John Winkelried | 0 | $0 |
| Jeff Woolard | 0 | $0 |
| Gunther Bright | 0 | $0 |
| Emily Rollins | 0 | $0 |

37.     In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| | Number of Unvested Management Incentive Units | Total Consideration for Unvested Management Incentive Units(1) | Number of Shares Underlying Unvested Company RSUs(2) | Total Consideration for Unvested Company RSUs(1) | Number of Shares Underlying Unvested Company PSUs(2) | Total Consideration for Unvested Company PSUs (1) | Aggregate Consideration for Unvested Management Incentive Units and Company Awards(1) |
|---|---|---|---|---|---|---|---|
| Peter Leav | 702,924 | $ 16,069,756 | 1,579,380 | $ 48,132,984 | 543,311 | $ 16,557,883 | $ 80,760,623 |
| Venkat Bhamidipati | 550,000 | $ 12,681,350 | 736,619 | $ 19,152,094 | 0 | $ 0 | $ 31,833,444 |
| Ashish Agarwal | 118,396 | $ 2,615,166 | 321,420 | $ 8,356,920 | 83,003 | $ 2,158,078 | $ 13,130,164 |
| Gagandeep Singh | 0 | $ 0 | 1,143,118 | $ 29,721,068 | 0 | $ 0 | $ 29,721,068 |
| Sohaib Abbasi | 0 | $ 0 | 18,135 | $ 471,510 | 0 | $ 0 | $ 471,510 |
| Mary Cranston | 0 | $ 0 | 18,135 | $ 471,510 | 0 | $ 0 | $ 471,510 |
| Tim Millikin | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | $ 0 |
| Kathy Willard | 0 | $ 0 | 18,135 | $ 471,510 | 0 | $ 0 | $ 471,510 |
| John Winkelried | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | $ 0 |
| Jeff Woolard | 0 | $ 0 | 0 | $ 0 | 0 | $ 0 | $ 0 |
| Gunther Bright | 0 | $ 0 | 7,575 | $ 196,950 | 0 | $ 0 | $ 196,950 |
| Emily Rollins | 0 | $ 0 | 6,878 | $ 178,828 | 0 | $ 0 | $ 178,828 |

38.     In addition, certain employment agreements with certain McAfee executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

### Golden Parachute Compensation

| Name | Cash ($) | Equity ($)(1) | Pension /NQDC ($) | Perquisites /Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Peter Leav | $4,923,576(2) | $80,760,623 | $ 0 | $ 0 | $ 0 | $ 0 | $85,684,199 |
| Venkat Bhamidipati | $2,175,110(3) | $31,833,444 | $ 0 | $ 0 | $ 0 | $ 0 | $34,008,554 |
| Ashish Agarwal | $1,363,481(4) | $13,130,164 | $ 0 | $ 0 | $ 0 | $ 0 | $14,493,645 |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of McAfee, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

41.     On December 21, 2021, the McAfee Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Adequate reasoning why no committee of independent and disinterested Board members was created to run the sales process;

b.   The specific reasoning why Morgan Stanley was engaged as a financial advisor in addition to Goldman Sachs;

c.   Adequate information as to Morgan Stanley's role as a financial advisor including specific reasoning as to why it did not submit a fairness opinion despite being engaged as a financial advisor;

d.   The total amount of consideration that Morgan Stanley will receive in exchange for its financial advisory services related to the Proposed Transaction;

e.   Whether the confidentiality agreements entered into by the Company with The Parent Consortium or any of its members differed from any other unnamed

confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    f.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Parent Consortium or any of its members, would fall away; and

    g.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning McAfee's Financial Projections*

43.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for McAfee provided by McAfee management to the Board, Goldman Sachs and/or Morgan Stanley and relied upon by Goldman Sachs in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed, "internal financial analyses and forecasts for McAfee prepared by its management."

45.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that McAfee management provided to the Board, Goldman Sachs and/or Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.     With regard to the *May 29 Projections* prepared by McAfee Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically:

        i.   adjusted operating income, including all necessary underlying sub-metrics of: net income (loss); the impact of amortization of intangible assets; equity-based compensation expense; interest expense; foreign exchange (gain) loss, net; taxes; and certain other operating and non-operating costs;

        ii.   depreciation expense; and

        iii.   certain other non-operating costs.

47.     With regard to the *Management Projections* prepared by McAfee Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically:

        i.   adjusted operating income, including all necessary underlying sub-metrics of: net income (loss); the impact of amortization of intangible assets; equity-based compensation expense; interest expense; foreign exchange (gain) loss, net; taxes; and certain other operating and non-operating costs;

1                ii.   depreciation expense;

2                iii.  certain other non-operating costs;

3           b.   Unlevered Free Cash Flows (less stock-based compensation), including all

4                underlying necessary metrics, adjustments, and assumptions, including

5                specifically: net cash provided by operating activities; interest payments;

6                capital expenditures; and stock-based compensation.

7      48.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-

8 GAAP to GAAP metrics utilized in the projections.

9      49.    This information is necessary to provide Plaintiff in his capacity as a Company

10 stockholder a complete and accurate picture of the sales process and its fairness. Without this

11 information, Plaintiff is not fully informed as to Defendants' actions, including those that may

12 have been taken in bad faith, and cannot fairly assess the process.

13      50.    Without accurate projection data presented in the Preliminary Proxy Statement,

14 Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs'

15 financial analyses, or make an informed decision whether to vote in favor of the Proposed

16 Transaction. As such, the Board has violated the Exchange Act by failing to include such

17 information in the Preliminary Proxy Statement.

18      *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

19      *Goldman Sachs*

20      51.    In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion

21 and the various valuation analyses performed to render such opinion. However, the descriptions

22 fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

23 underlying assumptions. Without this information, one cannot replicate the analyses, confirm the

24 valuations or evaluate the fairness opinions.

25      52.    With respect to the *Implied Premia and Multiples* analysis, the Preliminary Proxy

26 Statement fails to disclose the following:

27

28

a.   The total number of fully diluted outstanding shares of Company Stock as of November 4, 2021; and

b.   The net debt of McAfee as of September 25, 2021.

53.   With respect to the *Selected Public Company Comparables* analysis, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific reasoning as to why only two companies where chosen for comparison.

54.   With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific inputs and assumptions used to determine the utilized discount rate range of 7.5% to 8.5%;

b.   McAfee's weighted average cost of capital utilized;

c.   The terminal values for McAfee calculated;

d.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 1.0% to 2.5%;

e.   The specific inputs and assumptions used to determine the utilized terminal year NTM Adj. EBITDA multiples ranging from 8.4x to 12.7x;

f.   The specific company-specific inputs utilized, including: the company's target capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a beta for the company, as well as certain financial metrics for the United States financial markets generally;

g.   The total number of fully diluted outstanding shares of Company Stock; and

h.   The net debt of McAfee as of September 25, 2021.

55.   With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the utilized enterprise value to NTM Adj. EBITDA multiples of 10.0x to 14.0x;

b. The number of projected year-end fully diluted shares of Company Stock for each of the years 2021 to 2023;

c. The specific inputs and assumptions used to determine the utilized illustrative discount rate of 8.5%;

d. McAfee's cost of equity utilized; and

e. The company-specific inputs utilized, including the beta for the Company.

56. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a. The specific date on which each selected transaction closed;

b. The aggregate value of each selected transaction; and

c. The specific inputs and assumptions used to determine the utilized reference range of EV/NTM EBITDA multiples of 11.1x to 19.0x.

57. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public McAfee stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63.    The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

66.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of McAfee's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of McAfee within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause McAfee to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled McAfee and all of its employees. As alleged above, McAfee is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 20, 2022                          **BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*